190 So. 396

**LOVE et al. v. WOODARD.**

No. 34972.

May 29, 1939.

Rehearing Denied June 26, 1939.

T. H. McGregor, of Alexandria, and P. E. Brown, of Arcadia, for appellants.

Robert H. Wimberly, of Arcadia, for appellee.

ODOM, Justice.

York Love, husband of Roxy Love, executed a mortgage dated December 5, 1929, on 80 acres of land, in favor of A. E. Woodard. His wife did not join in the act of mortgage to waive the homestead. But the act of mortgage recited that the mortgagor was not then living on the land. York Love died in 1931 without having paid the debt secured by the mortgage, or any part of it. Woodard, the mortgagee, instituted foreclosure proceedings against the widow and children of the marriage, in September, 1933.

The widow and the children, represented by counsel, attempted to prevent the sale of the property under the foreclosure proceeding, on the ground that the property was the homestead of the debtor at the time it was mortgaged and was exempt from seizure and sale, under Section 1, Article XI, of the Constitution, the benefit of which exemption they claim as the surviving spouse and minor children.

Counsel who represented defendants overlooked the following clause in the act of mortgage: "Mortgagor does not live on the above described land." His attention was called to this recital by counsel for plaintiff on the day the case was called for trial. Roxy Love, the widow, was then in the courtroom and was consulted by her counsel, after which the following admission was made and filed:

"It is admitted by both the plaintiff and defendant that at the date of the execution of the mortgage that Roxy Love and none of his family was living on the property covered by the mortgage but that since said time the said Roxy Love with his family did move onto the property and was living on the property at the date of his death and that the property was community property.

"Also it is admitted that at the time the mortgage was executed and for several years prior thereto that York Love and his family was living on O. G. Thomas' farm."

It is conceded that the name "Roxy Love" used in this admission is a typographical error and should have been written "York Love". Based on this admission, judgment was rendered by the court on October 2, 1936, rejecting defendant's claim to the homestead exemption.

A writ of seizure and sale was issued on November 5, 1936; the property was seized on March 1, 1937, and advertized for sale, the sale to take place on April 10, 1937.

On April 9, 1937, the day before the sale was to take place, the widow filed the present suit to set aside the judgment dated October 2, 1936, rejecting her claim to the homestead exemption. The grounds set up in the petition to set aside the judgment were that the clause in the mortgage reciting that the mortgagor was not then living on the land was inserted through fraud and to deprive the mortgagor of his rights to claim the homestead; that the said clause was contrary to the true facts, which were that the mortgagor was living

on the property with his family at the time the mortgage was given; that he and his family had moved on the property on November 29, 1929, which was six days before the mortgage was executed.

She further alleged that, on the basis of this false statement in the mortgage, there was dictated into the note of evidence taken at the trial of the former suit, the purpose of which was to stop the foreclosure proceeding, a statement that the said York Love and his family were not living on the property at the time of the execution of the mortgage. She alleged that the said statement was not true but was contrary to the facts and was inserted without her knowledge or consent. She further alleged that the judgment in the former suit rejecting her claim to the homestead exemption was based upon the false and erroneous statement dictated into the record as part of the evidence.

She further alleged that she did not discover until a short time prior to the filing of this suit that such admission had been made by her counsel, and that knowledge thereof came to her long after the judgment was rendered. She prayed that the former judgment be set aside, and for judgment decreeing that she was entitled to the benefit of the homestead exemption.

Defendant filed a plea of estoppel, which does not seem to have been passed on by the trial judge. He then filed answer, in which he denied generally and specially the allegations of plaintiff's petition, especially denied the allegation that the clause in the mortgage, reciting that the mortgagor

was not living on the property at the time it was mortgaged, was fraudulently inserted, and especially denied that Roxy Love was ignorant of the fact that there was dictated into the record at the trial of the former suit the statement that the mortgagor was not in fact living on the property at the time the mortgage was made. He affirmatively alleged that, as a matter of fact, the mortgagor was not living there at that time.

There was judgment rejecting plaintiff's demand and dismissing her suit, from which judgment she appealed.

Counsel for appellant states in his brief that there is only a question of fact involved in this suit, that question being whether York Love was living on the premises involved at the time of the execution of the mortgage. Counsel for appellee concurs in that statement.

It would subserve no useful purpose to discuss in detail the testimony adduced at the trial. It suffices to say that plaintiff testified that York Love moved on this property with his family on November 29, 1929, which was six days before the mortgage was executed. She called six witnesses to corroborate her testimony to that effect. She and her witnesses became somewhat confused when cross-examined as to how they knew the exact date on which the family first occupied the property. This case was tried, and the testimony was taken, approximately seven years after the mortgage was given, and for that reason it is not surprising that they seem to have forgotten certain details relating to

the move of the family from the plantation of Mr. O. G. Thomas to the mortgaged property; but the substance of their testimony is that they did make the move before December 5, which was the date of the mortgage. Two of the witnesses called for plaintiff made statements on cross-examination which indicated that their recollection was that the move was not made until about December 24, but other statements made by them might reasonably be construed to mean that they intended to give evidence supporting plaintiff's claim that the family made the move prior to the date of the mortgage.

The most emphatic testimony adduced by plaintiff was that of a white man named Tennison, who was a well-digger. He testified positively that he put down a well on the property on December 4 and 5 and that at that time York Love and his family were living on the property. A great deal of the testimony given by other witnesses revolved around the question as to when Tennison put the well there. Tennison had no records or memoranda to show the date, but testified from memory, as did all the other witnesses for plaintiff.

As to whether the mortgagor was living on the property at the time the mortgage was given, the testimony of plaintiff's witnesses is contradicted by each and every witness called by defendant.

Mr. Woodard testified positively that the mortgagor was not living on the property. He stated that he visited the property about the time the mortgage was made and that there were no improvements

whatever thereon. He testified that York Love at the time was heavily indebted unto O. G. Thomas, on whose plantation he had lived for a number of years, and that the purpose of his making the loan to him was to enable him to pay his debts and to obtain money with which to buy material for the erection, on his own property, of a house in which he and his family might live. He testified that the lumber and other material of which the house on the property was built were paid for out of the proceeds of the loan which he had made to York Love.

Mr. Woodard was a merchant at the time and handled building materials such as nails, roofing, etc. His book-keeper, using an itemized account against York Love to refresh his memory, testified that roofing for the house was sold to York Love by Woodard and that the charge for the roofing was made on December 21, and that he was positive that the charge was made on the day the roofing was sold. Another witness called by defendant testified that he personally delivered this roofing on the date it was sold. The account referred to shows a charge for nails on December 14, for hinges and nails on December 17, and for roofing on December 21. The book-keeper testified that he was positive that these materials were delivered on the dates sold.

Lem Kinard, who owned a half interest in the well outfit used by Tennison in making the well, testified that the well was not put down until after Christmas in 1936. That, of course, contradicts Tennison as to the date the well was made. Mr. Kinard testified further that he knew positively that York Love and his family did not move on the property until some time in the latter part of December. He testified that he delivered the roofing personally the day before Christmas.

The testimony of the defendant and his witnesses is emphatic and positive that York Love was not living on the property at the time the mortgage was made.

■ Counsel for defendant offered in evidence certain sheets from the ledger accounts as shown by defendant's books. The introduction of these sheets, or copies of the ledger accounts, was objected to by counsel for plaintiff on the ground that a merchant's books are not admissible in his favor. The trial judge permitted the ledger sheets to be filed. If it be conceded that this was an erroneous ruling, plaintiff has suffered no harm, for the reason that the book-keeper had used these ledger sheets to refresh his memory, and no objection was urged to his doing so.

■ Aside from the defendant's testimony touching the point as to whether York Love was living on the property at the time the mortgage was made, there are circumstances corroborating their statements. Among them are the facts, first, that the mortgage itself recited that he was not living on the property, and there is no testimony at all to show that anyone connected with the mortgage transaction intended to, or did, practice any fraud against the mortgagor. If he had been

living on the property, the mortgagee could have easily obtained a waiver by the wife. Second, the admission dictated into the record at the trial of the first suit goes further than to say that the mortgagor was not living on the property. It shows where he was living at the time the mortgage was made. We refer to that paragraph in the admission which reads as follows: "Also it is admitted that at the time the mortgage was executed and for several years prior thereto that York Love and his family was living on O. G. Thomas' farm."

It was proved at the trial of this case that, at the time of the former case, after counsel's attention was called to the clause in the mortgage which he had overlooked, he then and there consulted his client, who was in the courtroom. He must have gotten from his client the information as to where York Love was living prior to his moving on his own property, for there is nothing in the record to indicate that he had any personal knowledge of this fact. ·

The trial judge had before him the record in the former case, together with a record of the moratorium proceedings had before the moratorium commissioner, showing that this plaintiff had on two occasions applied for an extension of time in which to pay this debt. He saw and heard the witnesses, and decided against plaintiff. Our reading of the record convinces us that he did not err in his judgment.

The judgment appealed from is affirmed, at the cost of plaintiff.

FOURNET, J., absent.